IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,        :

    Plaintiff,        :

                                                Case No. 3:08cr169

    vs.        :

                                                JUDGE WALTER HERBERT RICE

ANTHONY DIXON,        :

    Defendant.        :

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. #19)

---

Defendant Anthony Dixon ("Defendant" or "Dixon") is charged in the Indictment (Doc. #3) with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). The firearm underlying that charge was discovered when seen by a police officer in the vehicle in which Dixon had been riding on November 16, 2008. The Defendant has filed a motion, requesting that this Court suppress that firearm as evidence. See Doc. #19. On January 16, 2009, this Court conducted an oral and evidentiary hearing on that motion, and the parties have filed their post-hearing memoranda. See Docs. ##23-26. This Court now rules upon the Defendant's Motion to Suppress Evidence (Doc. #19), beginning its analysis by reviewing the facts that were established during the evidentiary hearing.

At about 6:45, during the evening of November 16, 2008, Officer Joshua Frisby ("Frisby") of the Dayton Police Department was on routine patrol, when he observed an automobile being driven in the opposite direction with only one headlight illuminated. As a consequence, Frisby turned around and stopped that vehicle.[1] The vehicle had two occupants, including the Defendant, who was seated in the front passenger's seat. The vehicle was being driven by Letitia Rose ("Rose"). After approaching the vehicle on the driver's side, Frisby explained why it had been stopped and asked Rose for identification and proof of insurance. The officer also obtained identification from the Defendant.

Frisby then returned to his cruiser and entered information he had obtained form Rose and Dixon, concerning their identities, into the computer in his cruiser, to determine whether Rose had a valid driver's license and whether there was an outstanding warrant on either. Frisby learned that Dixon had recently been arrested several times for weapons and drug trafficking violations. As a consequence, about four minutes after stopping the vehicle, Frisby, who was alone at the location of the traffic stop, became nervous and decided to frisk Defendant. To that end, the officer returned to the stopped vehicle and asked Dixon to step outside. About 30 seconds after later, while Frisby was patting down Dixon outside of the vehicle in which the latter had been riding, the officer saw a pistol

---

[1] A video camera in Frisby's cruiser recorded that traffic stop. A copy of the videotape was introduced into evidence as Government's Exhibit 1. Since the microphone Frisby would normally wear to record sound for such a videotape was in the trunk of his cruiser being recharged, there is no sound on the tape. In addition, the time shown on the tape does not accurately reflect the correct time, although it shows the elapsed time of the stop, and the events and the timing of same that took place during that stop.

protruding from the floor mat on the passenger's side of that vehicle, after which he placed Dixon in handcuffs and retrieved the pistol from the automobile.[2]

As an initial matter, it is not and could not be questioned that the stop of the vehicle in which the Defendant had been traveling did not violate his rights under the Fourth Amendment. In <u>Whren v. United States</u>, 517 U.S. 806 (1996), the Supreme Court rejected the argument that an officer's subjective motivation was pertinent to the inquiry as to whether a traffic stop violated the Fourth Amendment. Rather, the <u>Whren</u> Court held that a traffic stop does not violate the Fourth Amendment, as long as there is probable cause to believe that there has been a violation of a traffic ordinance, regardless of the officer's subjective motivation for the stop. <u>Accord</u> <u>United States v. Ferguson</u>, 8 F.3d 385 (6th Cir. 1993) (<u>en banc</u>). Herein, Frisby had probable cause to believe that a traffic ordinance was being violated, given that Ohio Revised Code § 4513.04(A) prohibits driving a motor vehicle without at least two headlights, one near each side of its front.[3] <u>See also</u>, <u>State v. Evans</u>, 67 Ohio St.3d 405, 407, 618 N.E.2d

---

[2]Frisby testified that approximately one-quarter of the butt of the pistol could be seen sticking out from the floor mat. Transcript ("Tr.") of January 16, 2009, Oral and Evidentiary Hearing (Doc. #22) at 9. Frisby was able to recognize the pistol butt he observed as belonging to a Glock, since that is the type of firearm he had carried throughout his five years as a police officer.

[3]Section 4513.04(A) provides in pertinent part:
>  (A) Every motor vehicle, other than a motorcycle, and every trackless trolley shall be equipped with at least two headlights with at least one near each side of the front of the motor vehicle or trackless trolley.

Headlights are required to be displayed between sunset and sunrise and when there are unfavorable atmospheric conditions. <u>See</u> Ohio Rev. Code § 4513.03. It is not disputed that 6:45 p.m., was between sunset on November 16th and sunrise on November 17th.

162, 165 (1993) (noting that a traffic stop is lawful where an officer has observed a vehicle being operated with only one headlight).

Dixon initially argues, however, that his rights under the Fourth Amendment were violated, because Frisby unnecessarily extended the duration of the traffic stop by frisking him (Defendant). Alternatively, Dixon argues that the frisk itself violated his rights under the Fourth Amendment. Parenthetically, recently in Arizona v. Johnson, — U.S. —, 129 S.Ct. 781 (2009), the Supreme Court unanimously held that officers may pat down a passenger in a lawfully stopped motor vehicle, only if they have reasonable suspicion to believe that he is armed and dangerous.[4] The Government, in contrast, argues that the seizure of that weapon was lawful, in accordance with the plain view doctrine. For reasons which follow, this Court rejects Dixon's assertions that the Glock pistol must be suppressed because of those two alleged constitutional deprivations. Additionally, this Court agrees with the Government that the seizure of the firearm was lawful in accordance with the plain view doctrine. Accordingly, the Court overrules Defendant's Motion to Suppress Evidence (Doc. #19).

As is indicated, the Defendant initially argues that the Glock pistol must be suppressed, because frisking him illegally extended the length of the stop. The Sixth Circuit has long recognized that, once the purpose of a traffic stop has been completed, a police officer "may not further detain the vehicle or its occupants

---

[4]The same standard is used to assess the legality of the frisk of a pedestrian under Terry v. Ohio, 392 U.S. 1 (1968).

unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." United States v. Perez, 440 F.3d 363, 370 (6th Cir. 2006) (internal quotation marks and citation omitted). To support this assertion, Dixon places primary reliance on United States v. Blair, 524 F.3d 740 (6th Cir. 2008). Therein, the Sixth Circuit held that the continued detention of the defendant for more than 13 minutes, after a traffic stop had been transformed into a drug investigation, violated the defendant's Fourth Amendment rights, since the traffic stop had not generated the necessary reasonable suspicion to justify a further detention. Herein, although frisking Dixon was not strictly necessary in order to complete the traffic stop, this Court concludes that Frisby did not "further detain" him as a result; therefore, Blair is distinguishable.

As an initial matter, the Supreme Court held, in Maryland v. Wilson, 519 U.S. 408 (1997), that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." Id. at 415. Therefore, Frisby did not violate Dixon's rights by telling him to get out of the vehicle.

In addition, the Sixth Circuit has held that not every expenditure of time which is not strictly necessary to complete the purpose of a traffic stop must be justified by reasonable suspicion, lest the stop be deemed to violate the Fourth Amendment. For instance, in United States v. Burton, 334 F.3d 514, 518 (6th Cir. 2003), the Sixth Circuit held that asking more questions to the occupants of a stopped vehicle than are necessary to issue a traffic citation does not turn a reasonable detention into an unreasonable one. Moreover, in Blair, supra, the Sixth Circuit noted that asking the driver of a vehicle for permission search the vehicle does not extend to duration of a traffic stop, thus rendering the stop violative of

the Fourth Amendment, unless that request had been supported reasonable suspicion. Herein, Frisby had spent about 30 seconds preparing to frisk and frisking Dixon, when he looked inside the car and saw that firearm. Quite simply, this Court is unable to conclude that the constitutionality of a traffic stop must be assessed with a stop watch, in the absence of authority mandating such a result. On the contrary, extending the duration of the traffic stop by 30 seconds does not cause this Court to conclude that Frisby violated Dixon's Fourth Amendment rights, even assuming, for sake of argument, that Frisby's decision to frisk Dixon was not supported by reasonable suspicion. In Blair, by contrast, police officers extended the length of the stop 13 minutes in order to await the arrival of a drug detection dog.

With respect to the Defendant's assertions that the Glock pistol must be suppressed, both because Frisby's decision to search him unlawfully extended the duration of the traffic stop and because Frisby did not have reasonable suspicion to believe that Dixon was armed and dangerous, the Court will accept for present purposes that the officer lacked such suspicion. In accordance with Arizona v. Johnson, supra, the frisk of the Defendant would have violated the his Fourth Amendment under those circumstances. The Court also assumes that the officer violated Defendant's Fourth Amendment rights by extending the duration of the stop, in order to frisk him, without reasonable suspicion. Nevertheless, the Court concludes that the firearm seized from the automobile will not be suppressed, because the firearm was not obtained as a result of either assumed constitutional violation, nor does it constitute the fruit of the poisonous tree of same. In United

States v. Pearce, 531 F.3d 374 (6th Cir. 2008), the Sixth Circuit explained the exclusion of evidence predicated upon the violation of a defendant's Fourth Amendment rights:

> In order to deter law enforcement officials from violating the Fourth Amendment by stopping persons without reasonable suspicion or by arresting them without probable cause, the Supreme Court has directed that "all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court regardless of its source." Mapp v. Ohio, 367 U.S. 643, 654 (1961); see also Weeks v. United States, 232 U.S. 383 (1914) (establishing the exclusionary rule). This exclusionary rule is supplemented by the "fruit of the poisonous tree" doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure. See Wong Sun v. United States, 371 U.S. 471, 484-85 (1963); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920). However, in order to exclude evidence under these constitutional doctrines, the defendant must show more than "the mere fact that a constitutional violation was a 'but-for' cause of [the police's] obtaining [the] evidence." Hudson v. Michigan, 547 U.S. 586, 592 (2006). "[B]ut-for causality is only a necessary, not sufficient condition for suppression." Id. "Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. (quoting Wong Sun, 371 U.S. at 487-88, 83 S.Ct. 407 (internal quotation marks omitted)).

Id. at 382. Herein, it bears emphasis that Frisby did not discover the Glock pistol as a direct result of frisking Dixon. On the contrary, that firearm was inside the vehicle, and Frisby frisked him while both he and the Defendant were standing outside of it.

The evidence supports the finding that the assumed constitutional violations were merely the "but-for" cause of the discovery of the Glock pistol. For instance, if Frisby had not been standing next to the passenger's side door, frisking Dixon, he would not have seen that weapon protruding from below a floor mat on the

passengers side of the stopped vehicle. However, this Court cannot find that the Glock pistol was discovered by exploitation of the assumed constitutional deprivations, i.e., the frisk. On the contrary, it finds that the firearm was discovered "by means sufficiently distinguishable to be purged of the primary taint." Id. (internal quotation marks and citation omitted). Frisby was located next to the passenger's side of the vehicle, from where he could see the Glock pistol, because he was frisking Dixon next to the passenger's door from which Dixon had exited. However, it was not necessary for him to frisk the Defendant in that location. The frisking of Dixon is otherwise unrelated to the discovery of the handgun by Frisby. For instance, the officer did not discover some evidence or contraband when he frisked Dixon, which led him to look inside the car to discover the Glock pistol. Frisby could have discovered it if he had decided to initially approach the passenger's side of the vehicle, rather than the driver's.[5] Moreover, there is no evidence that, when Frisby discovered the firearm, he had accomplished all steps necessary to complete the traffic stop, such as writing a traffic ticket.

Accordingly, even assuming for sake of argument that Frisby violated Dixon's Fourth Amendment rights, this Court cannot conclude that the Glock pistol must be suppressed as a result.

As is indicated above, the Government argues that the Court cannot suppress the pistol, because Frisby seized same in accordance with the plain view

---

[5]To the extent that Dixon's presence in the passenger's seat would have prevented Frisby from seeing the pistol, the officer had the lawful authority to order the Defendant to get out of the automobile, thus eliminating that potential barrier.

doctrine. In <u>United States v. Herndon</u>, 501 F.3d 683 (6th Cir. 2007), the Sixth Circuit explained the plain view doctrine:

> Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 375 (1993). The government has the burden of proving the legality of a warrantless search. <u>United States v. Haynes</u>, 301 F.3d 669, 677 (6th Cir. 2002).

<u>Id</u>. at 692. The Sixth Circuit has repeatedly applied the plain view doctrine to items seized from automobiles. <u>United States v. Campbell</u>, 549 F.3d 364, 373 (6th Cir. 2008); <u>United States v. Bishop</u>, 338 F.3d 623, 626 (6th Cir. 2003), <u>cert. denied</u>, 540 U.S. 1206 (2004). This Court finds that the evidence establishes each of the three elements set forth in <u>Herndon</u>.

<u>First</u>, the Court finds that Frisby was lawfully in the position from which he saw the Glock pistol. He was standing outside the vehicle at that time. Nevertheless, Dixon argues that Frisby was not in such a position, because the officer had violated his (Defendant's) Fourth Amendment rights by extending the duration of the stop and by frisking him. The Defendant has not explained, however, why either of those asserted constitutional violations made it illegal for Frisby to be located outside the stopped vehicle. If Defendant's argument in this regard is based upon the premise that the vehicle would not have been where it was, but-for the alleged constitutional deprivations, this Court rejects same, since he has failed to cite authority indicating that such is a necessary element to be established before the plain view doctrine can be utilized.

<u>Second</u>, the incriminating nature of the firearm was readily apparent, given that, under Ohio law, it is illegal to transport a firearm in an automobile in the

manner the Glock pistol was being transported.  See Ohio Rev. Code § 2913.16(C).[6]

Third, Frisby had the right of lawful access to the firearm, given that he had probable cause to believe that it was evidence of a violation of § 2913.16(C).  The Sixth Circuit has frequently held that "[u]nder the automobile exception, police officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.' United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998)." United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007).  The right to conduct a search to seize the Glock pistol gave Frisby lawful access to it.

Accordingly, the Court concludes that Frisby lawfully seized the Glock pistol under the plain view doctrine.

---

[6]Section 2913.16(C) provides:
> (C) No person shall knowingly transport or have a firearm in a motor vehicle, unless the person may lawfully possess that firearm under applicable law of this state or the United States, the firearm is unloaded, and the firearm is carried in one of the following ways:
> (1) In a closed package, box, or case;
> (2) In a compartment that can be reached only by leaving the vehicle;
> (3) In plain sight and secured in a rack or holder made for the purpose;
> (4) If the firearm is at least twenty-four inches in overall length as measured from the muzzle to the part of the stock furthest from the muzzle and if the barrel is at least eighteen inches in length, either in plain sight with the action open or the weapon stripped, or, if the firearm is of a type on which the action will not stay open or which cannot easily be stripped, in plain sight.

Notably, transporting a firearm partially hidden under a floor mat is not a manner authorized by the Ohio General Assembly.

Based upon the foregoing, the Court overrules Defendant's Motion to Suppress Evidence (Doc. #19).

April 22, 2009

/s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.